# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>EX REL. CRYSTAL DERRICK,<br><br>   Plaintiff-Relator,<br><br> v.<br><br>ROCHE DIAGNOSTICS CORP.;<br>ROCHE DIABETES CARE, INC.;<br>ROCHE HOLDINGS AG;<br>HUMANA, INC.; AND<br>HUMANA PHARMACY, INC.,<br><br>   Defendants. | Case No. 1:14-cv-04601<br><br>Judge Elaine E. Bucklo<br>Magistrate Judge Jeffrey T. Gilbert |

## HUMANA, INC. AND HUMANA PHARMACY, INC.'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   BACKGROUND .......................................................................................................... 2

III.  ARGUMENT ................................................................................................................ 3

     A.  All Claims Should Be Dismissed Because the Relator Does Not and Cannot State a Claim Under Count I ................................................................................................ 4

        *1.* *The Alleged Conduct Falls within the Managed Care Safe Harbor.* .......................... 5

        *2.* *The Relator Fails to Plead Count I with Plausibility and Particularity.* .................... 7

        a. The Relator fails to allege any false or fraudulent claim for payment. ........................ 8

        b. The Relator fails to plead the requisite knowledge and willfulness. .......................... 10

        c. The Relator impermissibly relies upon group pleading. ............................................. 12

     B.  Count II for Making False Statements Should Be Dismissed. ....................................... 13

     C.  Count III for Conspiracy to Violate the FCA Should Be Dismissed. ........................... 14

     D.  Count IV for Retaliation Must Be Dismissed as to Humana. ....................................... 14

     E.  The Relator Should Not Be Permitted to Conduct Discovery in Connection with a Further Amendment to her Complaint. ......................................................................... 15

IV.  CONCLUSION ............................................................................................................ 17

ii

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................ 4, 11

*Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.,*
    95 F.R.D. 524 (N.D. Ill. 1982)................................................................................ 17

*City of Chicago v. Janssen Pharms. Inc.,*
    No. 1:14-cv-04361, 2015 WL 13448016 (N.D. Ill. Sept. 30, 2015)......................... 17

*DeJohn v. The .TV Corp. Int'l,*
    245 F. Supp. 2d 913 (N.D. Ill. 2003) ....................................................................... 3

*In re Sulfuric Acid Antitrust Litig.,*
    231 F.R.D. 331 (N.D. Ill. 2005)........................................................................ 16, 17

*Klaczak v. Consol. Med. Transp.,*
    458 F. Supp. 2d 622 (N.D. Ill. 2006) ...................................................................... 10

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)............................................................................................... 17

*Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,*
    179 F.3d 523 (7th Cir. 1999) .................................................................................... 3

*Rocha v. Rudd,*
    826 F.3d 905 (7th Cir. 2016) .................................................................................. 12

*Rockwell Int'l Corp. v. U.S.,*
    549 U.S. 457 (2007)............................................................................................... 15

*Singer v. Progressive Care, SC,*
    202 F. Supp. 3d 815 (N.D. Ill. 2016) ........................................................... 8, 15, 16

*U.S. ex rel. Bogina v. Medline Indus., Inc.,*
    809 F.3d 365 (7th Cir. 2016) ................................................................................ 1, 2

*U.S. ex rel. Bott v. Silicon Valley Colls.,*
    262 F. App'x 810 (9th Cir. 2008) ........................................................................... 12

*U.S. ex rel. Durcholz v. FKW Inc.,*
    189 F.3d 542 (7th Cir. 1999) ................................................................................. 10

*U.S. ex rel. Fowler v. Caremark RX, L.L.C.*,
    496 F.3d 730 (7th Cir. 2007) ............................................................... 5, 9, 10

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
    328 F.3d 374 (7th Cir. 2003) ..................................................................... 4, 10

*U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*,
    772 F.3d 1102 (7th Cir. 2014) ........................................................................ 9

*U.S. ex rel. Kalec v. NuWave Monitoring, LLC*,
    84 F. Supp. 3d 793 (N.D. Ill. 2015) ...................................................... passim

*U.S. ex rel. Keeler v. Eisai, Inc.*,
    568 F. App'x 783 (11th Cir. 2014) ............................................................... 16

*U.S. ex rel. Kennedy v. Aventis Pharms., Inc.*,
    610 F. Supp. 2d 938 (N.D. Ill. 2009) ............................................................ 8

*U.S. ex rel. Robinson v. Northrop Corp.*,
    149 F.R.D. 142 (N.D. Ill. 1993) ................................................................. 3, 4

*U.S. ex rel. Walner v. NorthShore Univ. Healthsystem*,
    660 F. Supp. 2d 891 (N.D. Ill. 2009) ........................................................ 4, 8

*U.S. ex rel. West v. Ortho-McNeil Pharm., Inc.*,
    No. 03 C 8239, 2007 WL 2091185 (N.D. Ill. July 20, 2007) .................... 16

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ........................................................................ 16

*U.S. v. Am. at Home Healthcare & Nursing Servs., Ltd.*,
    No. 14-cv-1098, 2017 WL 2653070 (N.D. Ill. June 20, 2017) ................... 13

*U.S. v. Williams*,
    218 F. Supp. 3d 730 (N.D. Ill. 2016) .......................................................... 10

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    136 S. Ct. 1989 (2016) .................................................................................... 3

## STATUTES

31 U.S.C. § 3729 ................................................................................................ 9, 10

31 U.S.C. § 3730 ............................................................................................. passim

31 U.S.C. § 3733 ...................................................................................................... 2

42 U.S.C. § 1320a-7b ........................................................................................................ 5, 8, 9

**RULES**

42 C.F.R. § 1001.952 ........................................................................................................ 6, 7

Fed. R. Civ. P. 8 ..................................................................................................................... 4

Fed. R. Civ. P. 9 ..................................................................................................................... 3

Fed. R. Civ. P. 12 ................................................................................................................... 4

Fed. R. Civ. P. 26 ................................................................................................................. 15

Fed. R. Civ. P. 54 ................................................................................................................... 4

**OTHER AUTHORITIES**

Federal Health Care Programs: Fraud and Abuse; Statutory Exception to the Anti-Kickback Statute for Shared Risk Arrangements, 64 Fed. Reg. 63,504 (Interim Final Rule Nov. 19, 1999) (codified at 42 C.F.R. § 1001.952(t)) ............................................................................ 6

Humana, Inc. and Humana Pharmacy, Inc. (collectively, "Humana") respectfully submit the following points and authorities in support of their Motion to Dismiss the Second Amended Complaint (the "SAC").

## I.    PRELIMINARY STATEMENT

Relator Crystal Derrick brought this *qui tam* action on behalf of the United States for alleged violations of the False Claims Act (the "FCA"). The Relator alleges she worked for a division of Roche Diagnostics Corp.,[1] a medical supply company that sells products used to monitor blood sugar in diabetic patients. After just 14 months on the job, Roche fired the Relator for sending pricing information to a client. The Relator claims she was an integral part of negotiations to defraud the government during her short tenure at Roche. However, the face of the SAC demonstrates that this is a baseless claim the Relator brought in an attempt to exact retribution on her former employer. Humana is simply caught in the crossfire.

Viewed in context, the Relator's claims are based on routine negotiations over rebate agreements that are common in the healthcare industry. These types of rebate agreements are made every day between medical supply manufacturers and insurers, not only with the government's knowledge, but with its blessing. The resulting transactions lower medical supply costs for Medicare and other government programs, and Congress and the relevant administrative agencies have therefore exempted them from the FCA's reach. The government investigated the Relator's allegations. Given the clear regulatory approval for these types of rebate agreements, it is unsurprising that the government declined to pursue the Relator's claims.

A *qui tam* relator is "a bounty hunter," seeking as much as 30% of the recovery for her own pockets. *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 367 (7th Cir. 2016); 31

---

[1] Roche Diagnostics Corp., Roche Diabetes Care, Inc., and Roche Holdings AG are referred to collectively herein as "Roche." The docket reflects that Roche Holdings AG has not been served and therefore is not a party.

U.S.C. § 3730(d)(2). "[F]ederal law places some obstacles in the path of its bounty hunters." *Bogina*, 809 F.3d at 367. The Relator has failed to overcome those obstacles. Indeed, the SAC does not specifically identify a single claim Humana submitted to the government for payment, nor does it explain how such a claim might be false or identify a specific person who knew it was false at the time of submission. Even if she pleaded with greater specificity, however, her claim would still be barred by a regulatory safe harbor expressly permitting the challenged conduct. Accordingly, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

## II.    BACKGROUND

The Relator filed her original complaint under seal on June 18, 2014. (Dkt. No. 1.) Pursuant to the FCA's statutory structure, the government then conducted an investigation, which included issuing Civil Investigative Demands to the Defendants and analyzing documents produced in response. *See* 31 U.S.C. §§ 3730(b)(2), 3733. At the end of its investigation, the government filed a Notice of Election to Decline Intervention on May 12, 2017. (Dkt. No. 20.)

The SAC, filed June 30, 2017, is the Relator's third attempt at pleading fraud. (Dkt. No. 29.) The Relator has substantially changed the parties, claims, and factual allegations in each of her three complaints, which demonstrates how far she is stretching to manufacture some liability theory. As alleged in the SAC, the Relator was employed by Roche for 14 months. (*Id.* ¶ 4.) She claims to have knowledge of "certain contracts" under which Roche paid rebates to Humana in connection with listing Roche's Accu-Check diabetes products on Humana's prescription drug formularies. (*Id.* ¶¶ 47-49.) The Relator formed an opinion that "Humana had not complied with the terms of its agreement with Roche," and the Defendants agreed to resolve the breach of contract allegations for a "final sum" that "did not exceed $11 million."[2] (*Id.* ¶¶ 51, 70.) After resolving

---

[2] This allegation, among many others, is clearly untrue. The final settlement amount was $22.5 million, as reflected in the December 1, 2013 Settlement Agreement and Mutual Release (the "Settlement Agreement"). (Exhibit E to

their breach of contract dispute, the Defendants entered a new formulary and rebate agreement. (*Id.* ¶ 69; *see also* Roche Exs. B, D.)  Humana receives a portion of its revenues from Medicare, with all relevant Medicare payments coming through the Medicare Advantage program.  (*Id.* ¶¶ 8-9, 48, 77.)  Roche terminated the Relator's employment in December 2013 for sending pricing information to a client.  (*Id.* ¶¶ 82, 85, 88.)

Based on these allegations, the Relator asserts four counts under the FCA against all Defendants: (1) presenting false claims; (2) making false statements material to a false or fraudulent claim; (3) conspiracy to violate the FCA; and (4) unlawful retaliation.

### III.  ARGUMENT

The FCA is not "'an all-purpose antifraud statute' . . . or a vehicle for punishing garden-variety breaches of contract or regulatory violations."  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) (quoting *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008)).  Instead, the FCA proscribes a specific type of fraud, and a complaint alleging an FCA violation "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Universal Health*, 136 S. Ct. at 2004 n.6; *U.S. ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145 (N.D. Ill. 1993).  A relator must allege "the who, what, when, where, and how" of the alleged fraud.  *U.S. ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp. 3d 793, 806 (N.D. Ill. 2015) (citing *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

---

Roche's Memorandum in Support of its Motion to Dismiss, which will be filed separately in redacted form or under seal (hereinafter, such exhibits will be cited as "Roche Ex. __").)  The Settlement Agreement and rebate agreements are integral to the Relator's allegations.  Therefore, the Court may consider the contracts in deciding this Motion. *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 916 n.2 (N.D. Ill. 2003) (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[W]here a complaint or an attachment to the complaint expressly refers to another document, such as a contract, the court can consider the referenced document" in deciding a motion to dismiss, even if it is not attached to the complaint).  In the event of a conflict between those agreements and the Relator's allegations, the agreements prevail.  *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) ("[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom.'" (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991)).

"Simple conclusory allegations of fraud do not suffice." *U.S. ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 895 (N.D. Ill. 2009). This heightened pleading standard serves at least three functions: "(1) to inhibit claims that are filed as a pretext to uncover unknown wrongs; (2) to protect defendants from the harm that results from charges of serious wrongdoing; and (3) to give defendants notice of the complained-of conduct, enabling defendants to prepare a defense." *Robinson*, 149 F.R.D. at 144 (citations omitted).

FCA complaints also must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). A complaint should be dismissed under Rule 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he complaint must not only provide a defendant with fair notice of a claim's basis but must also be facially plausible." *NuWave*, 84 F. Supp. 3d at 799 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Here, the Relator's allegations fall far short of the required particularity and plausibility. Each of the Relator's four claims should be dismissed, and the Relator should not be permitted to obtain discovery in connection with any further attempt to re-plead.

## A. All Claims Should Be Dismissed Because the Relator Does Not and Cannot State a Claim Under Count I.

Count I alleges that the Defendants violated 31 U.S.C. § 3729(a)(1)(A), which creates civil liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent

claim for payment or approval." (Dkt. No. 29 ¶¶ 15, 92-97.) Counts II-IV depend on liability under Count I, meaning the SAC must be dismissed in its entirety if the Relator cannot state a plausible claim under Count I with the necessary particularity. (*Id.* ¶¶ 98-108.)

To sufficiently plead the claim in Count I, "'a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.'" *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007) (quoting *U.S. ex rel. Walker v. R & F Prop. of Lake Cty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005)) (overruled on other grounds by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009)). The Relator bases this claim on an alleged violation of the Anti-Kickback Statute (the "AKS"). (Dkt. No. 29 ¶¶ 94-96.) To plead the underlying AKS violation, the Relator must allege that Defendants knowingly and willfully offered, paid, requested, or received remuneration in return for a referral or a purchase for which payment may be made under a Federal health care program. 42 U.S.C. § 1320a-7b(b)(1)-(2).

Count I should be dismissed because (1) the challenged conduct fits squarely within the managed care safe harbor; and (2) the Relator fails to plausibly plead fraud with particularity.

### 1. *The Alleged Conduct Falls within the Managed Care Safe Harbor.*

The Defendants allegedly agreed that Humana would place Roche's Accu-Chek diabetes product line in a preferred position on Humana's prescription drug formularies and charge higher co-pays on competing non-formulary products. (Dkt. No. 29 ¶¶ 45-46, 51.) In exchange, Roche would pay rebates to Humana. (*Id.* ¶¶ 45-49.) The Relator allegedly "discovered" that Humana breached the rebate agreement by failing to charge the higher co-pays on competing products. (*Id.* ¶ 51.) Roche demanded that Humana refund rebates paid for transactions that allegedly did not

meet the contractual requirements, and the Defendants negotiated the Settlement Agreement to resolve this disputed claim. (*Id.* ¶¶ 52-70; Roche Ex. E.) These are routine agreements related to discounts for formulary placement, which the Relator concedes are "common[]" in the industry. (Dkt. No. 29 ¶¶ 45-46.)

The Relator then asserts that part of the consideration for the Settlement Agreement was that Roche would obtain "new and continued access to Humana's formularies." (*Id.* ¶ 71.) She therefore claims that Roche's agreement to compromise the alleged amount owed constituted illegal "remuneration" (or a kickback) to Humana under the AKS. (*Id.*) Importantly, however, the Relator does not allege the government paid more than it otherwise should have for the Defendants' healthcare services or products.

Relator's theory fails as a matter of law. The managed care safe harbor to the AKS provides that "remuneration" does not include "any payment between . . . [a]n eligible managed care organization and any first tier contractor for providing or arranging for items or services," as long as the arrangement is outlined in a written contract that meets certain requirements. 42 C.F.R. § 1001.952(t)(1)(i). This safe harbor reflects a Congressional and regulatory policy determination that discount arrangements in the managed care context present "little or no risk of overutilization or increased costs to the Federal health care programs" because the "plans are paid a capitated [or fixed aggregate] amount for all the services they provide regardless of the dates, frequency or type of services." Federal Health Care Programs: Fraud and Abuse; Statutory Exception to the Anti-Kickback Statute for Shared Risk Arrangements, 64 Fed. Reg. 63,504, 63,506-07 (Interim Final Rule Nov. 19, 1999) (codified at 42 C.F.R. § 1001.952(t)).

The allegations in the SAC establish all of the elements of the managed care safe harbor. All of the relevant arrangements were outlined in written contracts. 42 C.F.R.

§ 1001.952(t)(1)(i)(a)(1); (Dkt. No. 29 ¶ 69). Humana meets the definition of an "eligible managed care organization," as "Humana was paid a capitated rate for its members" in Medicare Advantage. 42 C.F.R. § 1001.952(t)(2)(ii)(B); (Dkt. No. 29 ¶¶ 74, 77).[3] Likewise, because Humana was "paid a capitated rate," it had no way to seek payment from a "Federal health care program on a fee-for-service or cost basis," and as a result, the Defendants had no ability to "shift[] the financial burden of the agreement" to claim increased payments from a Federal health care program. 42 C.F.R. §§ 1001.952(t)(1)(i)(B)-(C); Dkt. No. 29 ¶ 77). Roche meets the definition of a "first tier contractor," as it "ha[d] a contract directly with an eligible managed care organization [Humana] to provide or arrange for items or services." 42 C.F.R. § 1001.952(t)(2)(iii); (Dkt. No. 29 ¶ 69). Roche's Accu-Chek diabetes products are "items and services," as they are "health care items, devices, supplies, or services." 42 C.F.R. § 1001.952(t)(2)(iv).

Because the challenged payments are not "remuneration" under the managed care safe harbor, there can be no "kickback" in violation of the AKS.[4] Accordingly, Count I should be dismissed without leave to amend. Because Counts II-IV depend on liability under Count I, they should also be dismissed.

### 2. *The Relator Fails to Plead Count I with Plausibility and Particularity.*

Count I also fails under Rule 9(b) because the SAC does not identify any false claim Humana made for payment from the government, it fails to plead that Humana possessed the required state of mind, and it impermissibly uses group pleading.

---

[3] The regulation refers to Medicare Part C. The SAC uses the defined term "Medicare Advantage" to refer to Medicare Part C. (Dkt. No. 29 ¶ 26 ("Medicare Part C ('Medicare Advantage') is a federal program . . . .).)

[4] The managed care safe harbor under the AKS is discussed in greater detail in Roche's Memorandum in Support of its Motion to Dismiss, and Humana incorporates that discussion by reference.

a. The Relator fails to allege any false or fraudulent claim for payment.

The AKS provides that "*a claim* that includes items or services resulting from [an AKS violation] constitutes a false or fraudulent *claim* for purposes of [the FCA]." 42 U.S.C. § 1320a-7b(g) (emphasis added). The Relator here identifies no such "claim." It simply is not enough to allege that "Humana provides . . . Medicare Advantage and Part D insurance," or that "Medicare accounts for approximately 75% of Humana Inc.'s total premium and service revenue," or even that Humana "submitted" some unidentified "encounter data and monthly reports and certifications to the Government." (Dkt. No. 29 ¶¶ 48, 8, 74.) Rather, to meet the Rule 9(b) standard, a relator must "provide representative examples" of specific false claims, and "failure to do so is fatal to [her] claim." *NuWave*, 84 F. Supp. 3d at 806; *Singer v. Progressive Care, SC*, 202 F. Supp. 3d 815, 825-26 (N.D. Ill. 2016); *U.S. ex rel. Kennedy v. Aventis Pharms., Inc.*, 610 F. Supp. 2d 938, 946-47 (N.D. Ill. 2009); *Walner*, 660 F. Supp. at 895, 898.

"[T]he Relator cannot merely describe a private scheme in detail but then . . . allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *NuWave*, 84 F. Supp. 3d at 803-04 (quoting *U.S. ex rel. Dolan v. Long Grove Manor*, No. 10 C 368, 2014 WL 3583980, at *3 (N.D. Ill. July 18, 2014)). This is precisely what the Relator does here. She spends the vast majority of her SAC alleging a private business relationship, an alleged breach of contract, and settlement negotiations to resolve that alleged breach of contract. However, she lacks the necessary detail to sufficiently plead that this alleged private business relationship resulted in the submission of a false claim to the government.

On this point, the Seventh Circuit's *Caremark* decision is instructive. There, the relators were Caremark pharmacy employees who alleged "they ha[d] particularized evidence

demonstrating that Caremark billed for prescriptions despite the fact that they were returned." *Caremark*, 496 F.3d at 741. This Court dismissed the relators' second amended complaint and denied leave to re-plead further. *Id.* at 735. The Seventh Circuit affirmed, explaining that "the Relators only have one-half of the evidence they need to survive under Rule 9(b)." *Id.* at 741. Although they alleged prescription drug returns, the pleading demonstrated no "knowledge of Caremark's financial activities and in particular how Caremark addressed these returns." *Id.* at 742. The pleading contained no "evidence *at an individualized transaction level* to demonstrate that Caremark failed to provide an appropriate refund or replacement for a returned prescription." *Id.* at 741-42 (emphasis in original). In other words, the relators improperly assumed that a false claim was submitted after a prescription was returned. *Id.* at 742.

The Relator's SAC here suffers from the same defect. The Relator alleges that she was employed by Roche Diagnostics Corp. and participated in certain negotiations to resolve an alleged breach of contract. (Dkt. No. 29 ¶¶ 4, 47-70.) However, as in *Caremark*, the Relator here has only "one-half of the evidence," and she makes no allegations about Humana's financial activities or how Humana addressed the alleged rebate arrangements with the government. *Caremark*, 496 F.3d at 741-42. The Relator does "not present any evidence *at an individualized transaction level* to demonstrate" that Humana presented any false claims to the government. *See id.* at 741-42. Accordingly, the Relator does not and cannot allege the most basic element of FCA liability—a claim that was presented to the government for payment or approval. 31 U.S.C. § 3729(a)(1)(A); 42 U.S.C. § 1320a-7b(g); *see also U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014). The SAC must therefore be dismissed.

b. <u>The Relator fails to plead the requisite knowledge and willfulness.</u>

The Relator's FCA claim based on an alleged AKS violation must satisfy the state of mind elements in both statutes. "The AKS only prohibits 'knowing' and 'willful' acceptance of remuneration in return for referrals of Medicare or Medicaid business." *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 673 (N.D. Ill. 2006) (quoting 42 U.S.C. § 1320a-7b(b)(2)). "The use of the term 'willfully' in conjunction with the term 'knowingly'" in the AKS demonstrates that "'willfully' must mean 'more than acting intentionally.'" *U.S. v. Williams*, 218 F. Supp. 3d 730, 736 (N.D. Ill. 2016) (quoting *U.S. v. Wheeler*, 540 F.3d 683, 690 (7th Cir. 2008)). Although a defendant need not have actual knowledge of the AKS to commit a violation, 42 U.S.C. § 1320a-7b(h), the "willfulness" element typically requires evidence of a "bad purpose" or "some knowledge that the conduct is unlawful." *Williams*, 218 F. Supp. 3d at 736 (citing *Bryan v. U.S.*, 524 U.S. 184, 190-191 (1998)). This Court has described the "knowing and willful" requirement in the AKS as "heightened *scienter*." *Klaczak*, 458 F. Supp. 2d at 626-27, 676-77.

After alleging a "knowing" and "willful" AKS violation, the Relator must also allege that the Defendants "knowingly" presented a false claim for payment in violation of the FCA. 31 U.S.C. § 3729(a)(1)(A). "Thus, '[i]nnocent mistakes or negligence are not actionable'; '[w]hat constitutes the offense is not intent to deceive but knowing presentation of a claim that is either fraudulent or simply false.'" *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544 (7th Cir. 1999) (quoting *Hindo v. Univ. of Health Sciences/The Chicago Med. Sch.*, 65 F.3d 608, 613 (7th Cir. 1995)); *see also Caremark*, 496 F.3d at 742; *Garst*, 328 F.3d at 376 ("[T]he False Claims Act condemns fraud, but not negligent errors or omissions.").

Although Rule 9(b) allows knowledge and intent to be alleged generally, the SAC does not contain facts to support a plausible inference that the Defendants acted with the requisite state of

10

mind.  The Relator alleges that "*Defendants* knowingly submitted, caused to be submitted and continue to submit and to cause to be submitted false or fraudulent claims for payment by the United States."  (Dkt. No. 29 ¶ 94.)  The law is clear, however, that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The SAC contains only two factual allegations that have even tangential bearing on what the Defendants knew when they allegedly submitted claims to the government for payment:

> 67.  Relator Derrick repeatedly expressed concerns that the resulting transaction would violate the AKS.  Relator had helped create an instructive AKS video for past employment, so she was personally aware of the illegality of the negotiations.

> 68.  In addition to raising concerns within the negotiation group, Relator discussed her concerns about the negotiations with Dan Majestic, Director of Channel Sales, and Lisa Rich-Milan, National Sales Director, Channel/Managed Markets.  Upon information and belief, Mr. Majestic informed Mr. Barnes that Relator had raised concerns about the negotiations with him.

(Dkt. No. 29 ¶¶ 67-68.)  These allegations fall far short of what is required to support a claim that Humana "willfully" violated the AKS or "knowingly" presented any false claim.  The Relator does not identify any Humana employee whom she informed of her "concerns" regarding the alleged AKS implications of the settlement.  Indeed, the only three individuals identified in Paragraphs 67-68—Mr. Majestic, Ms. Rich-Milan, and Mr. Barnes—all are allegedly Roche employees.[5] (Dkt. No. 29 ¶¶ 56, 68.)  There are simply no facts in the SAC that give rise to any inference that Humana was aware of any FCA or AKS concerns with these rebate transactions at all, much less that it "willfully" violated the AKS.

Moreover, under the circumstances described in the SAC, there can be no plausible inference that Humana knew that settling a rebate dispute could give rise to AKS or FCA liability.

---

[5] These allegations are insufficient even to meet the AKS state of mind requirements for Roche, as discussed in Roche's Memorandum in Support of their Motion to Dismiss.

The managed care safe harbor exists to encourage Humana to do exactly what it did—negotiate for lower prices from first tier contractors like Roche.  As demonstrated by the agreements themselves, all of the agreements with Roche comply with the managed care safe harbor.  The agreements reflect that Humana received discounts from Roche to minimize the costs associated with the Medicare program and to safeguard federal dollars.  None of the facts alleged by the Relator support a willful AKS violation.  Where a complaint reflects compliance with a safe harbor, "relators cannot show the required scienter under the False Claims Act for actions after the safe harbor regulation was promulgated."  *U.S. ex rel. Bott v. Silicon Valley Colls.*, 262 F. App'x 810, 812 (9th Cir. 2008).  Because the Relator has not and cannot allege that Humana possessed the necessary criminal state of mind, the SAC should be dismissed.

### c.  The Relator impermissibly relies upon group pleading.

The SAC defines "Roche" to include Roche Diagnostics Corp., Roche Diabetes Care, Inc., and Roche Holdings AG, and "Humana" to include Humana, Inc. and Humana Pharmacy, Inc. (Dkt. No. 29 at 1.)  It then repeatedly refers to "Defendants," "Roche," and "Humana" in the collective, failing to identify which particular Defendant allegedly engaged in what conduct.  This type of "group pleading" does not satisfy the particularity requirement in Rule 9(b), and the SAC should therefore be dismissed.  *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (A fraud claim should be dismissed where it "'lump[s] together' multiple defendants," as it "fails to provide fair notice to each individual Defendant concerning the nature of his or her alleged participation in the fraud." (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 778 (7th Cir. 1994))); *U.S. v. Am. at Home Healthcare & Nursing Servs., Ltd.*, No. 14-cv-1098, 2017 WL 2653070, at *9 (N.D. Ill. June 20, 2017).

### B. Count II for Making False Statements Should Be Dismissed.

In Count II, the Relator alleges that the Defendants violated 31 U.S.C. § 3729(a)(1)(B), which establishes civil liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." (Dkt. No. 29 ¶¶ 15, 98-101.) "To adequately plead a violation of § 3729(a)(1)(B), a plaintiff must allege that '(1) the [d]efendants made a statement in order to receive payment from the government; (2) the statement was false; and (3) the [d]efendants knew it was false.'" *NuWave*, 84 F. Supp. 3d at 800 (quoting *NorthShore*, 660 F. Supp. 2d at 896; citing *U.S. ex rel. Lisitza v. Par Pharm. Comp., Inc.*, No. 06 C 6131, 2013 WL 870623, at *3 n.5 (N.D. Ill. Mar. 7, 2013), *appeal docketed*, No. 17-2915 (7th Cir. Sept. 18, 2017)).

Apparently basing this claim on an implied certification theory, the Relator alleges, "[b]y making the regular submissions that were required in order for Humana to receive CMS payments, Humana impliedly certified that it was complying with the contract requirements, including compliance with the FCA and the AKS." (Dkt. No. 29 ¶ 76.) As discussed above, however, the Relator has not sufficiently alleged a violation of the FCA and the AKS. Therefore, she cannot plausibly allege that any implied certification of compliance was false.

Moreover, the SAC falls far short of specifying the "who, what, when, where, and how" of any false statement. *NuWave*, 84 F. Supp. 3d at 806. The Relator does not identify a specific individual who made a specific false statement or state when any alleged false statement was made. She does not allege any specific individual's state of mind while making an alleged false statement. It is not enough to allege (through improper group pleading) that "Humana" made a false statement. *See id.* Accordingly, Count II should be dismissed.

### C. Count III for Conspiracy to Violate the FCA Should Be Dismissed.

Count III alleges conspiracy to submit false claims under 31 U.S.C. § 3729(a)(1)(C). (Dkt. No. 29 ¶¶ 102-05.) This claim requires the Relator to allege that: (1) a defendant conspired with one or more entities to submit fraudulent claims; (2) at least one conspirator performed an act to submit the claim to the government; and (3) the government suffered damages resulting from the fraudulent claim. *NuWave*, 84 F. Supp. 3d at 800. The claim must be supported by facts "to adequately allege an agreement between the Defendants" to violate the law. *Id.* at 805.

The Relator has not sufficiently pled an underlying FCA violation, and her dependent conspiracy claim must therefore fail. Moreover, the only agreements identified in the SAC are the rebate agreements and the Settlement Agreement, and the Relator does not allege these private contracts were agreements to violate the law. Indeed, as in *NuWave*, the Relator does not describe any agreement to submit false claims to the government. *Id.* "Without an agreement [to violate the law], there can be no conspiracy." *Id.* (citation omitted). Accordingly, the Relator's conspiracy claim should be dismissed.

### D. Count IV for Retaliation Must Be Dismissed as to Humana.

Count IV alleges that the "Defendants" unlawfully harassed and terminated the Relator for protected conduct under the FCA. (Dkt. No. 29 ¶¶ 106-108.) This is a textbook example of why group pleading is not allowed. The FCA anti-retaliation statute applies only to an "employee, contractor, or agent," and the relief, such as reinstatement and back pay, may be afforded only by the employer. 31 U.S.C. § 3730(h). The Relator alleges she was an employee of Roche Diagnostics Corp. and "Roche terminated her employment, in retaliation for her reporting a fraud." (Dkt. No. 29 ¶¶ 3-4.) Because the Relator had no employment relationship with Humana, Count IV must be dismissed as to Humana.

### E. The Relator Should Not Be Permitted to Conduct Discovery in Connection with a Further Amendment to her Complaint.

At the August 23, 2017 Status Conference and in discussions among counsel, the Relator indicated a desire to re-plead, yet again, to add theories and claims based on documents the government provided to her during its investigation. She requests production of those documents in discovery to assist her in preparing a fourth complaint. In other words, the Relator seeks discovery about a complaint she has yet to file. This is never appropriate under the Federal Rules of Civil Procedure, which forbid a plaintiff from pursuing broad-ranging discovery in hopes of turning up a different claim than the one she has pled. Fed. R. Civ. P. 26(b)(1) (limiting the general scope of discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case"). It is particularly improper here, because the FCA expressly bars the Relator from attempting to salvage her deficient claims and secure a whistleblower's bounty based on information already in the government's possession.

Upon filing the complaint, the Relator was required to provide the government with a "written disclosure of substantially all material evidence and information [she] possesses." [6] 31 U.S.C. § 3730(b)(2). She should not be allowed to "later amend the complaint to include theories copied from the public domain or from materials in the Government's possession." *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 473 (2007) (emphasis added). "A *qui tam* action would serve no purpose . . . if 'the government is already aware that it might have been defrauded and can take responsive action.'" *Singer*, 202 F. Supp. 3d at 822 (quoting *Glaser*, 570 F.3d at 915). "Accordingly, a *qui tam* suit is barred when the allegations in the complaint are based on information that is already known to the government." *Id.*

---

[6] Even aside from the statutory mandate, there is no practical reason for a relator to hold back information from this disclosure, as it helps the relator establish a claim to the "bounty" as the original source. 31 U.S.C. § 3730(d)(2).

Moreover, "allowing [a relator] to use documents obtained in discovery to overcome pleading hurdles would circumvent the purpose of Rule 9(b)." *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 804-05 (11th Cir. 2014) (citing *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 229, 231 (1st Cir. 2004)); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) ("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent."); *U.S. ex rel. West v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *5 (N.D. Ill. July 20, 2007) (Rule 9(b) does not permit a relator to "file[] suit based upon his suspicion that the Defendants engaged in unlawful conduct with the hope that discovery will unearth some specific FCA violation.").

The Relator should not be permitted to amend her complaint further. She already has made three attempts to fix deficiencies in her pleadings. The government declined to intervene, and the SAC still fails to state any plausible fraud claim with particularity. To the extent the Court is inclined to give the Relator yet another bite at the apple, however, any further amendment should be based upon her own prior knowledge and limited to claims fairly encompassed by the facts in her original complaint.

Accordingly, to prevent the Relator's improper tactics, the Court should stay discovery pending resolution of this Motion. "District courts enjoy extremely broad discretion in controlling discovery." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

"Limitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim upon which relief can be granted," and "such stays are granted with substantial frequency." *Sulfuric Acid*, 231 F.R.D. at 336.

The Relator here essentially argues that discovery "might reveal information making dismissal inappropriate," a contention this Court has described as "puzzling to say the least." *Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.*, 95 F.R.D. 524, 525 (N.D. Ill. 1982) ("Plaintiffs' allegations either do or do not state a cause of action, and discovery does not seem to bear on that determination at all."); *see also City of Chicago v. Janssen Pharms. Inc.*, No. 1:14-cv-04361, 2015 WL 13448016, at *1 (N.D. Ill. Sept. 30, 2015). The Relator should not be allowed to demand discovery for the improper purpose of making a fourth attempt at pleading fraud, and the Court should therefore stay discovery pending resolution of this Motion.

## IV.   CONCLUSION

For each and all of the foregoing reasons, Humana respectfully requests that the Court dismiss the Second Amended Complaint with prejudice and without leave to amend as to the Relator, and without prejudice as to the United States.[7]

*[signature on following page]*

---

[7] Humana reserves the right to seek its reasonable attorneys' fees and expenses incurred in defending this matter by separate motion. *See* 31 U.S.C. § 3730(d)(4); Fed. R. Civ. P. 54(d)(2).

Respectfully submitted,

/s/ Scott C. Solberg
Scott C. Solberg
EIMER STAHL LLP
224 South Michigan Ave.
Suite 1100
Chicago, IL 60604
Phone: (312) 660-7666
Fax: (312) 692-1718
ssolberg@eimerstahl.com

*and*

John E. Kelly
(*admitted pro hac vice*)
Brian R. Iverson
(*admitted pro hac vice*)
BASS, BERRY & SIMS PLC
1201 Pennsylvania Ave. NW, Suite 300
Washington, DC 20004
Phone: (202) 827-2950
Fax: (202) 478-0792
jkelly@bassberry.com
biverson@bassberry.com

*Counsel for Defendants*
*Humana, Inc. and Humana Pharmacy, Inc.*

18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of October, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the following parties as indicated on the electronic filing receipt.

Jamie S. Franklin
THE FRANKLIN LAW FIRM LLC
53 W. Jackson Blvd., Suite 803
Chicago, IL  60604
Tel: (312) 662-1008
Fax: (312) 662-1015
jsf@thefranklinlawfirm.com

United States Attorney's Office
Northern District of Illinois – Chicago
219 South Dearborn Street
Chicago, IL  60604
usailn.ecfausa@usdoj.gov

*Counsel for the United States of America*

Ross B. Brooks
Inayat Hemani
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas
Suite 3100
New York, NY  10019
Tel: (646) 402-5650
Fax: (646) 402-5651
rbrooks@sanfordheisler.com
ihemani@sanfordheisler.com

Kevin H. Sharp
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, TN  37203
Tel: (615) 434-7001
Fax: (615) 434-7020
ksharp@sanfordheisler.com

*Counsel for Relator Crystal Derrick*

/s/ Scott C. Solberg