IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. CRYSTAL DERRICK, | )<br>)<br>) |
| Plaintiff-Relator, | ) No. 14 CV 04601<br>) |
| v. | ) Judge Elaine Bucklo<br>) Magistrate Judge Jeffrey T. Gilbert |
| ROCHE DIAGNOSTICS CORPORATION;<br>ROCHE DIABETES CARE, INC.;<br>HUMANA, INC.; AND HUMANA<br>PHARMACY, INC.<br>Defendants. | )<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Plaintiff-Relator Crystal Derrick's ("Relator") Motion to Compel Defendants-Roche Diagnostic Corporation, Roche Diabetes Care, Inc., Humana, Inc, and Humana Pharmacy, Inc. (together "Roche") to produce documents withheld on the basis of attorney-client privilege. For the reasons discussed below, the Court hereby denies Relator's Motion without prejudice with respect to the production of documents requested.

**BACKGROUND**

This False Claims Act action involves allegations by Relator that Roche violated two provisions of the Anti-Kickback Statute contained in 42 U.S.C. § 1320a-7b(b) and 42 U.S.C. § 1320a-7b(g). Relator claims Roche agreed to forgive debt owed by Humana in order to induce Humana to place Roche products on its formulary for Medicare Advantage members. Relator alleges this scheme caused false or fraudulent claims to be submitted for payment by Government health-care programs. Relator further describes that when she raised concerns about these practices with corporate management, Roche terminated her employment.

Roche denies these allegations and, among other affirmative defenses, asserts that "Relator's claims are barred because Roche at all times relevant to this Action acted in good faith, in compliance with applicable law, and consistent with industry practice." [ECF No. 95]. In support of the instant Motion to Compel, Relator argues that by pleading the affirmative defense of good faith and producing documents that show it consulted with counsel in connection with the agreements it reached with Humana, Roche injected its state of mind and, implicitly, its reliance on advice of counsel, into the case and therefore waived its attorney-client privilege.

## DISCUSSION

District courts have broad discretion in matters relating to discovery. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). Above all, the Court shares a duty, along with the parties, to administer the discovery process in a manner to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The issue in this case is whether Roche has waived its attorney-client privilege by pleading as an affirmative defense that it "acted in good faith, in compliance with applicable law, and consistent with industry practice" and by producing documents that show it consulted with counsel in connection with its negotiations with Humana.[1] [ECF No. 95]. Attorney-client privilege is "one of the oldest recognized privileges for confidential communications," *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003), and exists primarily to "'encourage full and frank

---

[1] Federal common law governs the existence and applicability of an evidentiary privilege in this case that arises under 28 U.S.C. §1331. Fed. R. Evid. 501. By contrast, when a court sits in diversity, courts apply state privilege law. *See, e.g., Lorenz v. Valley Forge,* 815 F.2d 1095 (7th Cir. 1987) (applying Indiana state law).

2

communication between attorneys and their clients.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). However, the attorney-client privilege can be waived, either explicitly or by implication. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987); *see also, United States v. Nobles*, 422 U.S. 225, 239 (1975); *United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013). Express waiver occurs where "information that would otherwise be privileged is not kept confidential." *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015). Implied waiver, the relevant inquiry in this case, can occur when a client asserts claims or defenses that put his or her attorney's advice "at issue" in the litigation. *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998).

The "at issue" waiver doctrine is limited and "should not be used to eviscerate the attorney-client privilege." *Silverman v. Motorola, Inc.*, 2010 WL 2697599 at *4 (N.D. Ill. 2010) (citing *LG Electronics v. Whirlpool Corp.*, 2009 WL 3294802 (N.D. Ill. 2009)). Merely asserting a claim or defense to which attorney-client communications are relevant, without more, does not constitute a waiver of attorney-client privilege. The privileged party must affirmatively put at issue the specific communication to which the privilege attaches before the privilege will be deemed waived. *United States v. Capital Tax Corp.*, 2011 WL 1399258 (N.D. Ill. 2011); *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001). To put the advice of counsel at issue by asserting a claim or defense, as Relator argues Roche has done here, the client must attempt to prove that claim or defense by disclosing or describing an attorney-client communication. *Capital Tax Corp.*, 2011 WL 1399258 at *2 (citing *Rhone-Poulenc v. Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir.1994); *Beneficial Franchise Co.*, 205 F.R.D. at 216-17.

The Seventh Circuit has not addressed directly the federal common law standard for when a party waives attorney-client privilege by putting privileged information "at issue" in a case.

However, in *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir.1995), the Seventh Circuit cited with seeming approval the standard adopted by the Third Circuit in *Rhone-Poulenc*. Taking direction from the Seventh Circuit, district courts within this circuit have applied the *Rhone-Poulenc* standard. *See, e.g., DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2015 WL 5123652 (N.D. Ill. 2015) (cited favorably in *Novak v. State Parkway Condo. Ass'n*, 2017 WL 1086767 (N.D. Ill. 2017)); *Capital Tax Corp.*, 2011 WL 1399258; *Silverman*, 2010 WL 2697599 at *4 (noting that "courts in this district have followed the Third Circuit's guidance that 'at issue' waiver applies only where the client asserts a claim or defense and attempts to prove that claim or defense by disclosing or describing attorney-client communication); *Bosch v. Ball-Kell*, 2007 WL 601721 (C.D. Ill. 2007); *Schofield v. U.S. Steel Corp.*, 2005 WL 3159165 (N.D. Ind. 2005); *Chamberlain Group v. Interlogix, Inc.*, 2002 WL 467153 (N.D. Ill. 2002); *Beneficial Franchise Co.*, 205 F.R.D. at 216.

*Rhone-Poulenc* and its progeny are persuasive. The Court is particularly swayed by the balance these cases strike between the presumption that a waiver of attorney-client privilege is to be narrowly construed and the principle that a party should not be able to selectively disclose privileged information it believes works to that party's advantage. *See Beneficial Franchise Co.*, 205 F.R.D. at 216. As Judge Schenkier noted in *Beneficial Franchise*, were the balance to be struck differently so that merely asserting a claim or defense would be sufficient to waive the privilege, "then any party asserting a claim or defense on which it bears the burden of proof would be stripped of its privilege and left with the draconian choice of abandoning its claim and/or defense or pursuing and protecting its privilege." *Id.* at 216.

The Court finds Roche has not waived its attorney-client privilege merely by asserting the separate defenses of good faith and reliance on applicable law or by producing documents that

4

indicate it consulted with counsel when it documented its agreement with Humana. In the Court's view, Roche must not only assert a defense, but also attempt to support that defense by relying on advice of counsel or disclosing an attorney-client communication before it may be deemed to have waived the privilege. In other words, by putting counsel's advice in issue. Roche has not yet done so. Roche has denied the allegations made by Relator and asserted, generally, the affirmative defenses it intends to present. This does not automatically waive the privilege as to any communications Roche may have had with counsel concerning the legality of its agreement with Humana.

Whether an attorney-client privilege exists or has been waived is a fact intensive inquiry. *See In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *see also, Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 1804350 (N.D. Ill. 2018). Based on the record as it has been developed on the instant Motion, both parties appear to recognize this Motion is somewhat premature. Relator acknowledges on several occasions that Roche has not yet offered either the fact of its consultation with counsel or the contents of any communication with counsel for any purpose. All that Roche has done is assert a defense that it acted in good faith and in accordance with law and produced documents responsive to Relator's requests. Relator, however, expresses concern that failure to raise the waiver issue at this early stage would prevent her from raising it in the future, as was the fate of the plaintiff in *Dorr-Oliver*. [ECF No. 145, p. 10, n. 6] (citing *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 834 F.Supp. 1008, 1012 (N.D. Ill. 1993) (holding that the plaintiff had exercised a lack of diligence by, in part, failing to file a motion to compel disclosure of defendant's privileged communications until the defendant offered consultation with counsel as substantive evidence). Roche, for its part, consistently urges the Court to wait and see if it attempts

to prove its affirmative defense using attorney-client communications before finding waiver, and Roche disclaims any intention to support its affirmative defense with advice of counsel.

Relator's argument that Roche has waived the privilege by tendering the documents contained within Exhibits C - I to its Motion is misplaced. [ECF No. 145]. Attorneys, unsurprisingly, were involved in the purchase, rebate, and settlement negotiations between Roche and Humana. The mere fact that attorneys advised Roche on the agreement does not open the door for Relator to examine all communications Roche had with its attorneys regarding that agreement. And while certain information discussed with or by those attorneys may be relevant to Roche's defense, that is insufficient to strip Roche of the privilege in that information. *See generally, Bosch,* 2007 WL 601721 at \*2.

To be sure, Roche has produced some documents that reference its attorneys' involvement in documenting a deal with Humana. Those documents contain references to discussions that may have occurred between lawyers for Roche and Humana, and to the fact that Roche's attorneys approved of the structure of the parties' agreement. [ECF No. 145, Exhibit I] ("Legal is comfortable separating and it includes free meters … I am meeting with legal shortly please make sure that your legal is comfortable with the plan below and separating the settlement from the contracts."); [ECF No. 145, Exhibit H] ("I know our legal teams have spoken but the approach we discussed yesterday provides a better solution."). Roche also discussed consulting an attorney as to whether the agreement with Humana complied with applicable law. [ECF No. 145, Exhibit G] ("We may have a few minor revisions to propose to the draft settlement agreement but I think we are now comfortable with the basic structure of the settlement from a regulatory perspective … We use Tom Crane at Mintz Levin for many of our anti-kickback issues. He advised us on this issue and prepared the draft settlement agreement."). But this is insufficient to effectuate a waiver

6

of the attorney-client privilege as it is not yet clear whether or how Roche intends to use its consultation with, or any advice received from, counsel in defending this case.

To the extent, however, that Roche will rely on the substance of its communication with counsel in mounting its defense, the Court's conclusion may be different. At this juncture, though, Roche represents it does not intend to do so. [ECF No. 163, p. 2, p. 6]. How Roche intends to establish that it acted in compliance with law, without describing specific advice from counsel and establishing it followed that advice, is unclear. *See, e.g., S.E.C. v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007) ("It isn't possible to make out an advice-of-counsel defense without producing the actual advice from an actual lawyer.") But Roche says it neither intends to offer an advice of counsel defense nor rely on its communications with counsel to show it acted in compliance with applicable law. The Court must and will take Roche at its word. If circumstances change and Roche does try to advance the defense it says it will not offer, then its privileged communications with counsel may be implicated and the issue will have to be revisited. *See generally, Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 318 (N.D. Ill. 2010) ("It would be unfair to allow an employer to hide its investigations and remedial efforts in the case up to the point of trial when it intends to use related evidence of its remedial efforts to evade liability.")

The Court recognizes, and case law confirms, that any analysis of a waiver of attorney-client privilege involves, to some degree, the question of fairness. *See, e.g., McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 918 (N.D. Ill. 1989). At this early stage, Roche has broadly pled its affirmative defenses and is entitled to an opportunity to establish them using non-privileged evidence if it so chooses. Both parties agree, however, that Roche cannot use the attorney-client privilege as both a sword and a shield. *See, e.g., Avery Dennison Corp. v. UCB Films PLC*, 1998 WL 703647 (N.D. Ill. 1998) ("Reliance upon counsel's opinions is a waiver of

privilege because to hold otherwise would be inherently unfair; it would allow a party to use privileged material as a 'sword' to attack the opposing party's allegations of bad faith, while hiding the basis of its good faith belief behind the 'shield' of privilege.") By stating that it does not intend to rely on any privileged communication to support its case, Roche has chosen to sheath the sword and narrow the scope of its own defense. Ultimately, the issue of fairness may not be fully explicated or developed until trial in the context of an analysis that may include Federal Rule of Evidence 403. The trial judge may have to decide what Roche can and cannot say about its attorneys' involvement in documenting the agreement with Humana so as to preserve its privilege without prejudicing Relator's right to respond to or cross-examine Roche's defense. But that discussion, as explained above, is premature at this early stage of litigation.

The Court is unpersuaded by Relator's heavy reliance on *Lorenz*, 815 F.2d 1095, *Ins. Corp. of Ireland v. Bd. of Trustees of S. Illinois Univ.*, 937 F.2d 331 (7th Cir. 1991), *Dawson v. New York Life Ins.*, 901 F. Supp. 1362 (N.D. Ill. 1995), *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), and *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994). With the exception of *Dawson*, these cases pre-date the Third Circuit's opinion in *Rhone-Poulenc* and the Seventh Circuit's apparent reliance on *Rhone-Poulenc* in *Garcia*. Citation to the above cases also ignores the weight of authority in this district since *Rhone-Poulenc* and *Garcia* were decided and which this Court, as noted above, finds persuasive.

Specifically, the Seventh Circuit's holding in *Lorenz* emphasized that a court cannot justify finding a waiver of the attorney-client privilege merely to provide the opposing party information that would be helpful to its cross-examination of a witness or because information is relevant. Using a similar, albeit brief, analysis in *Ins. Corp. of Ireland*, the Seventh Circuit agreed to allow access to privileged communications where the defendant had raised a defense of duress and the

communications were the only possible evidence of the defendant's state of mind and the truth of his duress defense. Neither the Seventh Circuit's holding in *Lorenz,* nor the court of appeals' footnote remarking on the trial court's decision in *Ins. Corp. of Ireland,* are at odds with the Court's decision here that Roche is entitled to attempt to prove its affirmative defenses using non-privileged evidence without sacrificing its attorney-client communications.

Other cases cited by Relator are distinguishable. In *Dawson,* just as in *Lorenz,* the district court applied state law to the attorney-client privilege claims based on the court's diversity jurisdiction. During the discovery phase, multiple depositions were conducted in which every employee stated he or she relied upon specific factual information contained in the very communications the other party sought to compel. *Dawson,* 901 F. Supp. at 1370. This is not the case here, where Roche has argued its affirmative defense without relying on specific attorney communications. Relator has not presented any evidence to show that Roche has, or will, rely on specific attorney communications to prove its defense and the documents attached to Relator's Motion are unavailing in that respect.

Finally, Relator's emphasis on the Eleventh Circuit decision in *Cox* is unpersuasive. As an initial matter, the Eleventh Circuit has declined to follow the *Rhone-Poulenc* standard embraced by courts within this district. On the merits, *Cox* is factually distinguishable. In *Cox,* the issue of waiver arose when U.S. Steel "injected the issue of its knowledge of the law into the case" by claiming that its revised leave of absence policy was lawful. *Cox,* 17 F.3d at 1418. U.S. Steel's state of mind was of central importance in the case, and the Eleventh Circuit held that the absence of a plainly-worded document to instruct the court as to the defendant's state of mind meant that disclosure of protected communications was the only equitable means of determining U.S. Steel's true state of mind at the time it instituted its policy. *Id.* at 1420. The appellate court subsequently

affirmed the district court's reasoning that "it would be inequitable to allow [U.S. Steel] to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in the privilege those documents tending to show it might have known its actions did not conform to the law." *Id.* at 1418. Here, there is evidence beyond privileged communications on which Roche could rely to advance its defense, including arguably a "plainly-worded" document found lacking in *Cox* in the form of Roche's written agreement with Humana and the two contracting parties' written communications with each other.

## CONCLUSION

For the reasons discussed above, Relator's Motion is denied without prejudice. It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 24, 2019